
# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM OWENS,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS DEL TORO, Secretary of the Navy,<br><br>Defendant(s). | Case No.: 18-cv-01579-JAH-JLB<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL**<br><br>[ECF No. 56] |

Before the Court is a motion to compel filed by Defendant Carlos Del Toro, Secretary of the Navy ("Defendant"). (ECF No. 56.) Defendant moves the court to either (1) compel Plaintiff William Owens ("Plaintiff") to sign and return a Veterans Affairs ("VA") authorization form, or (2) issue an order compelling the VA to produce all relevant records in its possession relating to Plaintiff. (*Id.* at 2.) Plaintiff has not filed an opposition to the motion. For the reasons stated below, Defendant's motion to compel is **GRANTED IN PART**.

///
///

## I. BACKGROUND

### A. Procedural Background

On July 12, 2018, Plaintiff commenced this action against Richard V. Spencer, Secretary, Department of the Navy, under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Federal Vocational Rehabilitation Act ("Rehabilitation Act"), and the Age Discrimination in Employment Act ("ADEA"), asserting claims of disability discrimination, retaliation for prior Equal Employment Opportunity ("EEO") activity, age discrimination, race discrimination, and hostile work environment. (ECF No. 1.) On August 8, 2018, and January 3, 2019, Plaintiff commenced two additional, separate actions against the Secretary of the Navy: *Owens v. Spencer*, No. 18-cv-01852-JAH-JLB (S.D. Cal.) and *Owens v. Spencer*, No. 19-cv-00012-JAH-JLB (S.D. Cal.). (*See* ECF No. 26.) On September 20, 2021, the Honorable John A. Houston consolidated all three actions and designated the above-captioned case as the lead case. (*Id.*) Judge Houston later administratively closed the two member cases. (*See* Order Closing Member Cases, *Owens v. Spencer*, No. 18-cv-01852-JAH-JLB (S.D. Cal.), ECF No. 16.)

Following consolidation, on November 1, 2021, Plaintiff filed a First Amended Complaint against Defendant. (ECF No. 27.) On September 12, 2022, Plaintiff filed a Second Amended Complaint, the operative complaint, against Defendant asserting claims of disability discrimination, retaliation for prior EEO activity, age discrimination, race discrimination, and hostile work environment. (Second Amended and Consolidated Complaint ["SAC"], ECF No. 36.)

Defendant moved to dismiss the SAC. (ECF No. 38.) On March 26, 2024, Judge Houston granted the motion to dismiss in part, finding that Plaintiff is time barred from alleging the following discrete discriminatory acts contained in paragraphs 75 and 76 of the SAC, including: (1) "Richard Bauer and Charles Duprey physically escorted the Plaintiff out of building 77 to building 76 four blocks away from the code 400 contract department isolating the Plaintiff,"; and (2) Plaintiff was "placed in a room without adequate ventilation, [] heating, [and the] windows [were] sealed shut which could not be

disturbed due to lead-based paint" and which "had no access to a restroom" that Plaintiff could use "to relieve himself of bodily functions" resulting in his admission to the VA hospital emergency room. (ECF No. 47 at 10–12 (quoting ECF No. 38 ¶¶ 75, 76).)

### B. Factual Background

Plaintiff is a former Supervisory Contract Specialist and was employed by the Department of the Navy at the Southwest Regional Maintenance Center, located in San Diego, California, until his dismissal on May 25, 2016. (*Id.* at 2.) Plaintiff alleges, *inter alia*, that he was subjected to vulgar language, harassment, and violent physical contact, and that he was passed over for promotions and transfers based on his race, color, age, and disability. (*See* SAC ¶¶ 11–93.) Plaintiff also claims the alleged discriminatory conduct created a hostile work environment. (*See id.*) Defendant's alleged violative conduct dates back to 2011 and continued through Plaintiff's termination in 2016. (*Id.*) Over the five-year period, Plaintiff asserts he filed seven complaints with the Department of the Navy's EEO Office, which he alleges resulted in retaliation. (*See id.* ¶¶ 6–10, 48, 54, 56, 58.) Plaintiff contends he administratively exhausted his grievances with his former employer and now seeks redress with this Court. (*Id.* ¶¶ 6–10.)

As a result of his workplace environment, Plaintiff claims that he now suffers from major depression, mental anguish, humiliation, embarrassment, and anxiety attacks. (*Id.* ¶ 23.) Plaintiff contends he was in constant fear of losing his job due to being in a hostile work environment. (*Id.* ¶¶ 50, 93.) Plaintiff further claims that due to continuous acts of discrimination for over seven years, he is currently 90% disabled and suffers from Post Traumatic Stress Disorder ("PTSD"), major depression, mental anguish, inability to work, humiliation, embarrassment, anxiety, anger, sexual dysfunction, changes in his marital relationship leading to a now-pending divorce, loss of self-worth, and hopelessness. (*Id.* ¶¶ 53, 93, 98, 104, 111, 118, 131.) Plaintiff contends that he is unable to function in the same manner as he could before the harassment and, despite medication and counseling, he has not been cured or had significant improvement. (*Id.* at ¶¶ 53, 98, 118.)

///

Plaintiff seeks declaratory relief, remedial training for Department of Navy officials and/or employees, costs of suit, and compensatory damages, including lost wages and losses resulting from humiliation, mental anguish, emotional distress, and harm to Plaintiff's reputation. (*Id.* at 33.) Plaintiff separately seeks $900,000 for emotional harm including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of health, damage to marriage resulting in divorce, injury to professional standing, injury to character and reputation, damage to credit standing, and other nonpecuniary losses incurred because of discriminatory conduct. (*Id.* at 34.)

## II.   LEGAL STANDARD

A party is entitled to seek discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. *Id.* Federal Rule of Civil Procedure 34 provides that a party may serve requests for documents, electronically stored information, or tangible things on any other party within the scope of discovery defined in Rule 26(b). Fed. R. Civ. P. 34(a). If a party fails to produce documents pursuant to Rule 34, the propounding party may bring a motion to compel. *See* Fed. R. Civ. P. 37(a).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." *Alves v. Riverside Cnty.*, 339 F.R.D. 556, 559 (C.D. Cal. 2021) (quoting *Bryant v. Ochoa*, No. 07-CV-00200-JM-PCL, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009)). "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). "Once the propounding party establishes that the request seeks relevant information, '[t]he party who resists discovery has the burden to show discovery should

not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'" *Goro v. Flowers Foods, Inc.*, 334 F.R.D. 275, 283 (S.D. Cal. 2018) (quoting *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009)). However, the Court must—either on motion or *sua sponte*—"limit the frequency or extent" of otherwise permissible discovery if the Court finds the request "unreasonably cumulative or duplicative" or the discovery sought is obtainable from a "more convenient, less burdensome, or less expensive" source. Fed. R. Civ. P. 26(b)(2)(C)(i).

### III. DISCUSSION

In moving to compel, Defendant seeks an order which would give effect to Defendant's proposed subpoenas for Plaintiff's medical records, either by compelling Plaintiff to sign and return an authorization form or by compelling the VA to produce all responsive records as if the subpoenas were accompanied by an authorization signed by Plaintiff. Defendant seeks, through the subpoenas, all of Plaintiff's medical records, including his mental health records, dating back to October 2011. (ECF No. 56.) Defendant makes no argument as to the relevance of Plaintiff's physical medical records, but he argues that he should be entitled to Plaintiff's mental health records based on the allegations in Paragraph 53 of the SAC. (*Id.* at 2.) In Paragraph 53, Plaintiff alleges that due to Defendant's "continuous acts of discrimination against [Plaintiff] for over seven years,"

> [Plaintiff] is currently 90% disabled and suffers from PTSD, major depression, mental anguish, inability to work, humiliation, embarrassment, anxiety, anger, sexual dysfunction, changes in his marital relationship now pending divorce, and suffers loss of self-worth and hopelessness. Plaintiff is unable to function in the same manner as he could before the harassment and despite medication and counseling, he has not been cured or has significantly improved.

(SAC ¶ 53.)

Defendant specifically contends that Plaintiff identified in interrogatory responses seven healthcare providers with the VA who provided him with treatment for emotional

distress, but only produced partial medical records,[1] including records that indicate additional providers not previously identified by Plaintiff. (ECF No. 56 at 2.) In the attached VA authorization form, Defendant seeks all of Plaintiff's medical records from the VA, including: (1) Plaintiff's health summary for the prior two years; (2) Plaintiff's medical records from October 10, 2011, to present; (3) Plaintiff's inpatient discharge summaries from October 10, 2011, to present; (4) Plaintiff's Progress Notes from several identified VA medical providers and clinics[2] from October 10, 2011 to present; (5) all operative and clinical procedures from October 10, 2011, to present; (6) all lab results from several identified VA medical providers and clinics from October 10, 2011, to present; (7) all administrative records from October 10, 2011, to present; (8) any and all medical and psychiatric records from October 10, 2011, to present. (ECF No. 56-1 at 1.) Defendant argues that without either a signed authorization or court order, the VA will not produce any records to Defendant. (ECF No. 56 at 2.)

Although Plaintiff has not filed an opposition, the Court addresses Defendant's request in light of relevant concerns below.

### A. Relevance

Here, Plaintiff has alleged that as a result of his workplace environment, he now suffers from major depression, mental anguish, humiliation, embarrassment, and anxiety attacks. (SAC ¶ 23.) Plaintiff further alleges that due to continuous acts of discrimination

---

[1] Defendant believes Plaintiff's production is incomplete because the records contain both Bates numbers and exhibit stickers, "indicating they are likely a set of curated exhibits from another case instead of [a] complete set of medical records from the VA." (ECF No. 56 at 2.) Defendant also notes that Plaintiff has produced only 70 pages of medical records despite claiming he has received mental health treatment at the VA for over a decade. (*Id.*)

[2] Defendant identifies the following providers and clinics: VA San Diego Health Care re: Jorge Porras, M.D.; Psych ADTP; Stanley Raczek, Staff Psychiatrist; Dr. John Keltner; Darien Cookson, RN; Dr. Lisa Campbell; Dr. Stephen Selzer; Eddie Agosto; and Donald Connor. (ECF No. 56-1 at 1.)

for over seven years, he is currently 90% disabled and suffers from PTSD, major depression, mental anguish, inability to work, humiliation, embarrassment, anxiety, anger, sexual dysfunction, changes in his marital relationship leading to a now-pending divorce, loss of self-worth, and hopelessness. (*Id.* ¶¶ 53, 93, 98, 104, 111, 118, 131.) Plaintiff also alleges that he is unable to function in the same manner as he could before the harassment and, despite medication and counseling, he has not been cured or significantly improved. (*Id.* at ¶ 53, 98, 118.)

Based on the foregoing, the Court finds that Plaintiff's mental health records are relevant to the issues of the extent of Plaintiff's emotional distress damages as well as the extent to which Plaintiff's mental distress was caused by Defendant's actions, as alleged. *See Doe v. City of Chula Vista*, 196 F.R.D. 562, 569 (S.D. Cal. 1999) ("But to insure [sic] a fair trial, particularly on the element of causation, the court concludes that [the] defendants should have access to evidence that [the plaintiff's] emotional state was caused by something else. [The d]efendants must be free to test the truth of [the plaintiff's] contention that she is emotionally upset *because of* the defendants' conduct. Once [the plaintiff] has elected to seek such damages, she cannot fairly prevent discovery into evidence relating to the element of her claim.") (emphasis in original); *Williams v. Cnty. of San Diego*, No. 17-cv-00815-MMA (JLB), 2019 WL 2330227, at *5–6 (S.D. Cal. May 31, 2019), *objections overruled*, 2019 WL 3543792 (S.D. Cal. Aug. 5, 2019) (holding that discovery relating to the plaintiffs' mental and emotional health was relevant because plaintiffs sought emotional distress damages).

However, the Court finds that Defendant has not sufficiently established that Plaintiff's physical medical records are relevant. Accordingly, the motion is denied to the extent Defendant seeks Plaintiff's medical records for treatment unrelated to his mental health.

B. **Privileges**

In federal question cases such as this, the federal law of privilege applies. *See* Fed. R. Evid. 501. Federal law recognizes the privileged relationship between a patient and his

psychotherapist but not more generally between a patient and his physician. *See Jaffee v. Redmond*, 518 U.S. 1, 9–10 (1996). Thus, Plaintiff's medical information regarding his physical health care is not shielded from discovery by any physician-patient privilege, as none exists under federal law. However, any confidential communications between Plaintiff and licensed psychiatrists, psychologists, or other similar licensed mental health providers made in the course of diagnosis or treatment would qualify for protection unless Plaintiff has waived the psychotherapist-patient privilege. *See id.* at 15 n.14 ("Like other testimonial privileges, the patient may of course waive the [psychotherapist-patient] protection."). Here, it appears Plaintiff has released some of his mental health records, thereby affirmatively waiving any psychotherapist-patient privilege over them. (*See* ECF No. 56 at 2.) Plaintiff's consent acts as an express waiver of any privilege over his mental health records.

However, even absent Plaintiff's consent through production, the psychotherapist-patient privilege has been waived by the nature of this lawsuit. Since the Supreme Court acknowledged the psychotherapist-patient privilege under federal common law, district courts have adopted varying approaches to determine whether a patient has waived the privilege. Courts in this district follow the "broad" approach, which holds that "a plaintiff who seeks to recover for emotional distress damages" has waived the privilege by "relying on [his] emotional condition as an element of [his] claim." *See Doe*, 196 F.R.D. at 568. Because Plaintiff is seeking $900,000 for emotional harm including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of health, damage to marriage resulting in divorce, and other nonpecuniary losses incurred because of discriminatory conduct, Plaintiff has placed his mental health at issue. (*See* SAC at 34.) As such, regardless of his consent, Plaintiff also has implicitly waived any psychotherapist-patient privilege over his mental health records.

Accordingly, the Court finds that Plaintiff's mental health records are not shielded from discovery due to privilege.

///

### C. Right to Privacy

The Supreme Court has recognized that individuals have privacy interests "in avoiding disclosure of personal matters [and] in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977). However, the Supreme Court has stopped short of expressly recognizing that those interests are constitutionally protected. *See Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 147 (2011) ("As was our approach in *Whalen*, we will assume for present purposes that the Government's challenged inquiries implicate a privacy interest of constitutional significance."). Similarly, the Ninth Circuit has acknowledged there may be a limited right to privacy in medical records in certain contexts. *See Doe v. Garland*, 17 F.4th 941, 947 (9th Cir. 2021) ("[I]ndividuals may have a constitutional privacy interest in certain, highly sensitive information[.]"). Where the court recognizes a "constitutionally-based right of privacy that can be raised in response to discovery requests," resolution of a party's privacy objection "requires a balancing of the need for the information sought against the privacy right asserted." *Soto v. City of Concord*, 162 F.R.D. 603, 616, 619 (N.D. Cal. 1995) (collecting cases); *see also In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999). "When a plaintiff places his medical conditions at issue, his expectation of privacy regarding those conditions is diminished." *Larson v. Bailiff*, No. 13-cv-02790 BAS (JLB), 2015 WL 4425660, at *5 (S.D. Cal. July 17, 2015); *see also Syed Nazim Ali v. Gilead Sci., Inc.*, No. 18-cv-00677-LHK (SVK), 2018 WL 3629818, at *2 (N.D. Cal. July 31, 2018) ("[A] person waives their right to privacy by bringing claims concerning physical or mental health injuries and seeking damages for those injuries.").

Here, Plaintiff has sufficiently placed his mental health at issue by alleging that as a result of his workplace environment, he now suffers from major depression, mental anguish, humiliation, embarrassment, and anxiety attacks. (SAC ¶ 23.) Plaintiff further alleges that due to continuous acts of discrimination for over seven years, he is currently 90% disabled and suffers from PTSD, major depression, mental anguish, inability to work, humiliation, embarrassment, anxiety, anger, sexual dysfunction, changes in his marital

relationship, loss of self-worth and hopelessness. (*Id.* ¶¶ 53, 93, 98, 104, 111, 118, 131.) Plaintiff also alleges that he is unable to function in the same manner as he could before the harassment and, despite medication and counseling, he has not been cured and has not significantly improved. (*Id.* at ¶ 53, 98, 118.) Given the foregoing, the Court finds that Defendant's interest in obtaining relevant discovery to defend itself in the instant action outweighs Plaintiff's privacy concerns. Further, the Court finds that a Protective Order is adequate to protect Plaintiff's privacy concerns. *See Soto*, 162 F.R.D. 616–17.

### D. Relevant Time Frame

Defendant seeks mental health records dating back to October 2011. (ECF No. 56-1.) Defendant does not explain the reasoning behind this specific date, but the Court finds the time frame reasonable. Plaintiff alleges that he experienced continuous acts of discrimination for over seven years, prior to his termination in 2016. (SAC ¶ 53.) Plaintiff further alleges in the SAC acts of discrimination dating back to April 2011. (*Id.* ¶ 11.)

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to compel (ECF No. 56) is **GRANTED IN PART**. Further, **IT IS HEREBY ORDERED**:

1. Within <u>five (5) days</u> of the electronic docketing of this Order, Defendant shall file a motion, either jointly with Plaintiff or *ex parte*, for a Protective Order, that covers, at a minimum, Plaintiff's mental health records.

2. Defendant shall amend the VA authorization form (ECF No. 56-1) to reflect that the information requested is limited to mental health records.

3. Within <u>ten (10) days</u> of the electronic docketing of this Order, Defendant shall provide Plaintiff with the amended VA authorization form that complies with this Order.

4. Plaintiff has until <u>fifteen (15) days</u> after the electronic docketing of this Order to sign the updated VA authorization form and return it to Defendant.

///
///
///

5. If Plaintiff declines to sign and return the updated VA authorization form within <u>fifteen (15) days</u> of the electronic docketing of this Order, Defendant is authorized to issue subpoenas to Plaintiff's mental health providers for records from the relevant time period. Health providers to whom Defendant issues subpoenas are ordered to comply with the subpoenas is if accompanied by an authorization form signed by Plaintiff.

**IT IS SO ORDERED.**

Dated: February 24, 2025

_____
Hon. Jill L. Burkhardt
United States Magistrate Judge